IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Harold Brooks, Clara Louise Brooks, | ) | C.A. No.: 6:14-cv-02267-BHH-JDA |
| Benjamin Brooks, William F. Tomz, | ) | |
| Frances W. Tomz, Sharon Finch, | ) | |
| Individually and as Class Representatives, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Arthur M. Field, Frederick Scott Pfeiffer, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on a motion to dismiss filed by Defendant Arthur M.
Field. [Doc. 24.] Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule
73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters in
cases involving litigation by individuals proceeding pro se and to submit findings and
recommendations to the District Court.[1]

Plaintiffs filed this case on June 11, 2014, alleging violations of the civil Racketeer
Influenced and Corrupt Organizations Act ("RICO"). [Doc. 1.] Defendant Arthur M. Field
("Field") filed a motion to dismiss on July 30, 2014. [Doc. 24.] Plaintiffs filed a response
in opposition on September 2, 2014 [Doc. 42], and Field filed a reply on September 5, 2014
[Doc. 44] and a substitute reply on September 8, 2014 [Doc. 46]. Accordingly, the motion
is ripe for review.

---

[1]Defendant Arthur M. Field is proceeding pro se.

## BACKGROUND

Plaintiffs bring this RICO action "as a class action for all 1,142 Note holders." [Doc. 1 ¶ 2.] Plaintiffs allege that they relied upon prospectuses prepared by Defendants as material representations to invest in their securities and to continue to let Defendants, by and through various corporations they controlled and/or managed, retain Plaintiffs' investments. [*Id.* ¶ 228.]

Field and Elliot Salzman arranged a meeting in New Jersey to pitch to a group of investors the idea of forming a business plan where money would be raised from South Carolina investors and then sent to a parent company in New Jersey for relending and real estate development. [*Id.* ¶ 11.] The investors agreed and, therefore, Lancaster Resources, Inc. ("LRI"), a New Jersey corporation, was formed on November 19, 1998. [*Id.* ¶ 12.] LRI held its organizational meeting of the first Board of Directors on February 24, 1999, and the minutes from that meeting reflect that LRI was to "acquire controlling interests of one or more other business to be used to further the business interests of the Corporation" and to "enter into a relationship with . . . a South Carolina limited liability company, and shall own 90% thereto, and shall borrow funds from such company and enter into repayment agreements." [*Id.* ¶¶ 13, 15.] The South Carolina entity formed pursuant to this business plan was ultimately named Capital Investment Funding, LLC ("CIF").[2] [*Id.* ¶ 16.] The initial incorporators meeting for CIF took place on February 25, 1999, and LRI owned more than 90% of the CIF membership interest. [*Id.* ¶ 18.] On March 13, 2000, the members of CIF executed an Operating Agreement, providing that "the primary purpose of [CIF] shall be to

_____

[2]CIF was initially formed as *Carolina* Investment Funding, LLC on January 13, 1999; however, it later changed its name to *Capital* Investment Funding, LLC. [Doc. 1 ¶¶ 17, 19.]

raise funding to be loaned to [LRI] for the purposes set forth in its Articles of Incorporation, By-Laws, Operating Agreements[,] etc., including the making of loans to purchase, develop, operate, lease, manage, and sell, alone or with others, commercial real property in the New York tri-state area, but this statement shall not confine or limit the Company's legitimate business activities." [*Id.* ¶ 25 (some alterations in original).]

On February 26, 1999, Field signed Form U-1, Uniform Application to Register Securities, which was submitted to the South Carolina Securities Division in connection with its application to register securities of up to $4,000,000. [*Id.* ¶ 20.] CIF issued a prospectus dated April 1, 1999, for distribution to South Carolina residents. [*Id.* ¶ 21.] CIF then began selling promissory notes to investors in South Carolina. [*Id.* ¶ 22.] During this time, Field primarily controlled the business activities of CIF. [*Id.* ¶ 23.] At some point, Field befriended Defendant Frederick Scott Pfeiffer ("Pfeiffer"), and the two began to intertwine their business affairs. [*Id.* ¶¶ 30–31.] The Complaint contains specific details about the alleged fraud by Defendants, including creating sham entities and making misrepresentations so that CIF's financial position appeared to be better than it was. On January 20, 2008, Field sent an unsigned letter to CIF's investors, indicating that CIF was no longer accepting monies and that it was winding up its business. [*Id.* ¶ 295.]

Plaintiffs purchased numerous notes from CIF between 2000 and 2008, with interest rates between 6.25% and 9.75% per annum. [*Id.* ¶¶ 229–93.] Interest is due on each note and has not been paid. [*Id.* ¶ 294.]

On or about June 13, 2012, the State Grand Jury of the State of South Carolina issued a criminal indictment against Defendants. [*Id.* ¶ 5.] Field was charged with two counts of criminal conspiracy under S.C. Code Ann. § 16-17-410, one count of forgery

under S.C. Code Ann. § 16-13-10, and eleven counts of securities fraud under S.C. Code Ann. §§ 35-1-501 and 35-1-508.  [Docs. 1 ¶ 299; 1-1 at 52–91.]  On or about May 6, 2013, Field entered into a plea agreement, agreeing to plead guilty to all charges.  [Docs. 1 ¶ 303; 1-4.]

Four previous actions have been filed against one or both Defendants relating to their dealings with CIF.  [Doc. 1 ¶ 312.]  On or about May 16, 2008, noteholders, including Plaintiffs in this action, instituted an action in South Carolina state court related to their purchase of securities from CIF.  [*Id.* ¶ 313.]  That suit was combined and consolidated with another action.  [*Id.*]  At the time, CIF remained under the control and direction of Field, and on or about August 24, 2009, the parties in that action reached a Global Settlement Agreement ("GSA").  [*Id.* ¶¶ 314–15.]  Under the GSA, control of CIF was given to a court-appointed receiver and the plaintiffs dismissed their actions against Defendants, but specifically agreed that "the rights of the class under any state or federal securities law shall not be affected by this settlement . . . ."  [*Id.* ¶ 315.]  Following the appointment of the receiver, CIF filed a legal malpractice claim against Pfeiffer and others.  [*Id.* ¶ 316.]  That case settled and was dismissed on February 15, 2013.  [*Id.* ¶ 318.]  On November 28, 2012, CIF filed an action in this Court alleging RICO violations and numerous state law claims.  [*Id.* ¶ 319.]  On August 26, 2013, CIF filed another action in this Court alleging the same violations against defendants named in the original RICO suit for the purpose of perfecting service on those defendants.  [*Id.* at 46 n.1.]  Both of these RICO cases were dismissed on January 20, 2015 as barred by the Private Securities Litigation Reform Act

4

("PSLRA").[3] *Capital Investment Funding, LLC v. Field*, Civil Action Nos. 6:12-3401-BHH, 6:13-2326-BHH, 2015 WL 247720 (D.S.C. Jan. 20, 2015). In this case, Plaintiffs allege two causes of action—a violation of 18 U.S.C. § 1962(c) and a violation of 18 U.S.C. § 1962(d)—and seek certification of a class as well as actual damages, trebled, plus attorneys' fees and costs. [Doc. 1 at 46–49.]

## APPLICABLE LAW

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented

---

[3]It is appropriate for this Court to take judicial notice of its prior cases. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

to and not excluded by the court, the motion is treated as one for summary judgment under

Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained

the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short
> and plain statement of the claim showing that the pleader is
> entitled to relief," in order to "give the defendant fair notice of
> what the . . . claim is and the grounds upon which it rests."
> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a plaintiff's
> obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do.
> Factual allegations must be enough to raise a right to relief
> above the speculative level on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright

& Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he

pleading must contain something more . . . than a bare averment that the pleader wants

compensation and is entitled to it or a statement of facts that merely creates a suspicion

that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at

556).  The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the

pleader must plead sufficient facts to show he is entitled to relief, not merely facts

consistent with the defendant's liability.  *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)).  Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Field filed his motion to dismiss pursuant to Federal Rules of Civil Procedure 8, 9, 12, 19, and/or 23 in two parts, arguing:

1. RICO is disfavored and does not apply herein;

2. The PSLRA bars Plaintiffs' Complaint;

3. The "criminal exception" to the PSLRA does not apply to Field or encompass these Plaintiffs;

4. The action is barred under the Supreme Court holding of *Janus Capital Group, Inc. v. First Derivative Traders*;

5. The statute of limitations bars this action as contained on the face of the Complaint;

6. This matter is barred by principles of issue and/or claim preclusion and/or the New Jersey entire controversy doctrine;

7. Plaintiffs fail to state a claim for RICO.  F.R.Civ.P. 8, 9, and 12;

8. Plaintiffs lack standing to bring this action;

7

9.     Field, as an LLC Manager, has no privity with any Plaintiff;

10.    To the extent Note Holders have not yet liquidated damages, CIF still possesses numerous valuable pieces of property, is still in litigation, this action is not ripe for adjudication and must be dismissed;

11.    Field is immune under South Carolina law, insulating a manager from virtually all claims made by third parties;

12.    The CIF Operating Agreement and the Prospectus provisions provided immunity for Field for all actions and indemnification for any claims made against him, including attorneys' fees and defense costs;

13.    Plaintiffs stand *in pari delicto* with Field and/or CIF;

14.    All Plaintiffs were *Tomz* Class members and contractually limited their ability to pursue any claims against Field in the GMSA and in the Application for Note Purchase;

15.    F.R.Civ.P. 12(b)(7) and 19 mandate dismissal for failure to join necessary parties;

16.    Intervening or supervening cause;

17.    Waiver, estoppel, and/or forum shopping; and

18.    Field is protected from representations in the Prospectus by the Safe Harbor provisions of securities law.

[Docs. 24-1–24-2.]   Together with exhibits, Field's motion to dismiss, memoranda in support, and exhibits total 197 pages.   At times, Field's memoranda are somewhat confusing and/or rely on pleadings that are not before the Court in this case.   In particular, Field frequently refers to filings from the previous cases before this Court. [*E.g.*, Doc. 24-1

at 3 (including references to the Second Amended Complaint).] The Court has endeavored to consider all portions of Field's filings that are relevant to this action.

As an initial matter, Plaintiffs argue that Field's exhibits should be stricken. [Doc. 42 at 1–2.] The Court agrees. In support of the motion to dismiss, Field submitted twenty exhibits. One of these exhibits, Exhibit A, is a filing from a prior case before the Superior Court of New Jersey, which may be appropriate for consideration by this Court on a motion to dismiss on preclusion grounds. However, Field's other exhibits do not appear to be appropriate for consideration on a motion to dismiss; accordingly, the undersigned has excluded these exhibits from consideration. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Additionally, to the extent Field attempts to argue about the facts alleged in the Complaint [*see, e.g.*, Doc. 24-1 at 6 (contending that Clara Brooks never owned any CIF notes individually and was not a CIF customer), 7 ("This is another deliberate misrepresentation by Plaintiffs' counsel, who are in possession of CIF's books and checks."), 8 ("There are many other false or deliberately misleading allegations in the Complaint, which detract from any minimal plausibility it may have.")], such arguments are inappropriate on a motion to dismiss. As stated, Plaintiffs' allegations are taken as true on a motion to dismiss. Having addressed these initial matters, the Court now turns to Field's arguments.

**RICO is Disfavored**

Field first argues that RICO claims are highly disfavored, this case is full of deliberate lies and misleading statements, and Field "may have committed technical violations of the South Carolina securities laws concerning Prospectus disclosures, but was not guilty of civil RICO or federal securities violations." [Doc. 24-1 at 15–16.] As stated, any argument regarding lies and misleading statements is inappropriate on a motion to dismiss, where the allegations in the Complaint are taken as true. As such, Field's motion should be denied with respect to this argument.

**The PSLRA and the Criminal Conviction Exception**

Field next argues that the PSLRA bars Plaintiffs' Complaint. [*Id.* at 16–19.] The RICO Act provides civil and criminal penalties for persons engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962. A pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). An act of racketeering is commonly referred to as a predicate act. The RICO Act includes a list of criminal offenses that constitute "racketeering activity" or predicate acts. 18 U.S.C. § 1961(1).

The PSLRA, passed in 1995, amended § 1964(c) of the RICO statute. In relevant part, the PSLRA provides, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [RICO]." 18 U.S.C. § 1964(c). The Committee Conference Report accompanying the PSLRA explained that the amendment was not intended merely to "eliminate securities fraud as a predicate offense in a civil RICO action," but also to prohibit plaintiffs from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil

10

RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Conf. Rep. No. 104-369 at 47 (1995).

At first glance, the RICO claims against Field are precluded by the PSLRA, as they include conduct actionable as securities fraud. However, Plaintiffs assert that the criminal conviction exception applies. [Doc. 42 at 2–9.] The PSLRA's bar "does not apply to an action against any person that is criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). As stated, on or about May 6, 2013, Field entered into a plea agreement, agreeing to plead guilty to two counts of criminal conspiracy, one count of forgery, and eleven counts of securities fraud. [Docs. 1 ¶¶ 299, 303; 1-1 at 52–91; 1-4.] Accordingly, because Field pled guilty to securities fraud, he has been "criminally convicted in connection with the fraud," and the criminal conviction applies to prevent the PSLRA from barring RICO claims asserted against Field.

Field argues that the criminal conviction exception does not apply because Field pled guilty to state, and not federal, securities fraud charges and because Plaintiffs were not specifically named as victims in the indictment. [Doc. 24-1 at 19–27.] However, a plain reading of the statute does not support Field's argument that the criminal conviction exception applies only to those convicted of federal securities fraud. The statute merely states that the PSLRA's bar "does not apply to an action against any person that is criminally convicted *in connection with the fraud*." 18 U.S.C. § 1964(c). Field has failed to direct the Court to any case where a court found that the criminal conviction exception did not apply because the defendant was convicted under state, as opposed to federal, securities fraud charges, and the Court declines to read such a requirement into the statute.

Moreover, the Court is not persuaded by Field's argument that the criminal conviction exception does not apply because Plaintiffs were not specifically named as victims in the indictment. In *Krear v. Malek*, 961 F.Supp. 1065, 1076 (E.D. Mich. 1997), the court interpreted the criminal conviction exception language narrowly to find that the exception is available only to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud. Thus, in *Krear*, the court held that "[u]nless the plaintiffs are named victims of the scheme to defraud in the information, this court cannot find that they have been criminally defrauded and are thereby entitled to invoke the 'conviction exception.'" *Id.* at 1077. Here, the indictment refers to losses to investors [*e.g.*, Doc. 1-1 ¶ 241] and names a few specific individuals as examples of investors [*e.g.*, *id.* ¶¶ 214–20 (listing the following individuals as examples of South Carolina citizens who had not been paid back: Hisanao Marushima, George Grant Jr., Larry Sons, James Medina, Charles Watson, Benjamin Brooks, and Bob Wynn); ¶¶ 386–88 (providing examples of how Field and CIF sold new notes to existing investors George Grant and Hisanao Marushima and sold a note to John Carpenter as an amendment to an existing note)]. This Court declines to read the criminal conviction exception language so narrowly as to require the indicment to name all 1,142 purported class members by name and finds that the reasoning in *Krear* is satisfied here because the indictment refers to investors and specifically states that the individuals named are mere examples of the South Carolina citizens who purchased notes from Field and CIF. Accordingly, the criminal conviction exception applies in this case, and Field's motion should be denied with respect to these arguments.

**The Supreme Court's Holding in *Janus Capital Group, Inc. v. First Derivative Traders***

Field contends that this action is barred under the Supreme Court's holding in *Janus Capital Group, Inc. v. First Derivative Traders*, — U.S. —, 131 S.Ct. 2296 (2011). [Doc. 24-1 at 27–30.] In *Janus*, the Court held that because false statements included in mutual fund prospectuses were made by an investment fund, the investment adviser and parent capital group could not be held liable in a private action under a Securities and Exchange Commission ("SEC") rule prohibiting employment of manipulative and deceptive devices in connection with the purchase or sale of securities. *Id.* The Court held, "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right." *Id.* at 2302.

Here, the June 13, 2012 indictment, which is incorporated in the Complaint by reference, specifically alleges that Field, as manager of CIF authored the 2002, 2003, 2004, 2005, and 2006 prospectuses. [Doc. 1-1 ¶ 239, 257, 278, 293, 303, 310, 344, 351.] As previously stated, on a motion to dismiss, Plaintiffs' allegations are taken as true. As such, the *Janus* decision does not bar this action against Field because the Complaint alleges that Field made the statements by authoring the prospectuses, and, thus, Field's motion to dismiss should be denied with respect to this argument.

13

**Statute of Limitations**

Next, Field argues that this action is barred by the statute of limitations. [Doc. 24-1 at 31–42.] The RICO statute does not contain an express statute of limitations. However, the Supreme Court has established a four-year statute of limitations applicable to civil RICO actions. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 156–57 (1987).

Here, the Court has found that the criminal conviction exception applies because Field has been convicted in connection with the fraud. The criminal conviction exception further provides that if it applies, "the statute of limitations shall start to run on the date on which the conviction becomes final." 18 U.S.C. § 1964(c). Field's conviction became final at his sentencing hearing on October 8, 2013. [Doc. 1-6.] Accordingly, the four-year statute of limitations began to run on October 8, 2013, and this action, filed on June 11, 2014, is timely. As such, Field's motion to dismiss should be denied with respect to this argument.

**Preclusion Doctrines and the New Jersey Entire Controversy Doctrine**

Field next contends this action is barred by res judicata and/or collateral estoppel and/or the New Jersey Entire Controversy Doctrine. [Doc. 24-1 at 42–50.]

### *Res Judicata and Collateral Estoppel*

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). "Collateral estoppel or issue preclusion forecloses the relitigation of issues of fact or law that are identical to issues which have been actually

14

determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Ramsay v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994) (alteration in original) (citation and internal quotation marks omitted).

Here, Field appears to argue that because the parties in the two previous state court actions reached a settlement, the GSA, and this case involves the same factual allegations, Plaintiffs are barred from bringing this action under res judicata or collateral estoppel. However, a review of the GSA reveals that the parties agreed "[t]he Complaint in [one] case as to . . . Field . . . will be dismissed without prejudice, subject however to the same conditions outlined in paragraph 9 following" [Doc. 1-8 ¶ 2] and that "the complaint in [the other] action against Mr. Field will be dismissed without prejudice within five (5) days of such approval, subject to conditions hereafter set forth [*id.* ¶ 8].  Paragraph 9 provides that "Class Counsel may reinstitute any claim or action dismissed without prejudice [and] . . . the rights of the class under any state or federal securities law shall not be affected by this settlement as to parties released or dismissed with prejudice."  [*Id.* ¶ 9.]  The GSA was approved and adopted by the court on August 24, 2009.  [*Id.* at 21.]

A dismissal of a claim without prejudice is not an adjudication of the merits of the controversy and has no preclusive effect as a matter of law.  *See, e.g., McEachern v. Black*, 496 S.E.2d 659, 663 (S.C. 1998).  Because the claims against Field were dismissed without prejudice in the state cases under the GSA, Plaintiffs' claims are not barred under res judicata or collateral estoppel.[4]

---

[4]The Court notes that Field asserts, "[o]n October 23, 2009, the Court held the G[]SA to be conclusive upon all parties and having *res judicata* effect, all dismissed by Judge Few

### *The New Jersey Entire Controversy Doctrine*

The New Jersey entire controversy doctrine is found in Rule 4:30A of the New Jersey Rules of Court and provides,

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except has otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

It is an equitable preclusionary doctrine "with the purposes of 'encourag[ing] comprehensive and conclusive litigation determinations, . . . avoid[ing] fragmentation of litigation, and . . . promot[ing] party fairness and judicial economy and efficiency.'" *Taddei v. State Farm Indem. Co.*, 2010 WL 183900, at *4 (N.J. Super. Ct. App. Div. Jan. 21, 2010) (unpublished decision) (citing Pressler, *Current N.J. Court Rules*, comment on R. 4:30A (2010)).  The doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.  *Cogdell by Cogdell v. Hospital Center at Orange*, 560 A.2d

---

in November, 2009." [Doc. 24-1 at 42.]  However, the record currently before this Court does not include any order dated October 23, 2009.  As such, on the record before this Court at the motion to dismiss stage, including the GSA, it appears the claims against Field were dismissed without prejudice and, therefore, have no preclusive effect.  In any event, "[w]hen a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties." *Keith v. Aldridge*, 900 F.2d 736, 740–41 (4th Cir. 1990) (citing 18 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 4443 (2d ed.); James, *Consent Judgments as Collateral Estoppel*, 108 U. Pa. L. Rev. 173 (1959)).  Thus, even if the record included the October 23, 2009 state court order, the Court would have to make a determination with respect to the intent of the parties, which is more appropriate on a motion for summary judgment and not a motion to dismiss.

1169, 1172 (N.J. 1989) (citation omitted). "The entire controversy doctrine is, at bottom, an equitable one." *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 806 A.2d 810, 817 (N.J. Super. Ct. App. Div. 2002) (citations omitted). "[A] court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate the claim." *Id.* (citation omitted).

Here, assuming without deciding that this Court is bound by the New Jersey entire controversy doctrine, the record before the Court does not support a finding that this case would be barred by the doctrine. Field has provided a copy of an order from the Superior Court of New Jersey denying a motion for reconsideration. [Doc. 24-3.] The order states that the case had been dismissed based on "the first-filed doctrine, *forum non conveniens*, collateral estoppel, and *res judicata*." [*Id.* at 3.] However, the order does not state what the causes of action were in the New Jersey case or any facts of that case. Accordingly, on the record before the Court at this time, the Court cannot find that the entire controversy doctrine, even if applicable, would bar the present suit.[5] As such, Field's motion to dismiss should be denied with respect to his arguments regarding preclusion.

---

[5]The Court notes that the plaintiff in the New Jersey case was CIF [Doc. 24-3 at 2], and Plaintiffs in this action are CIF noteholders. Because the entire controversy doctrine is an equitable one, and a court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate the claim, it seems that it would be inequitable to apply the doctrine to bar a suit by noteholders in South Carolina merely because CIF previously brought a suit against Field in New Jersey. Additionally, because the New Jersey case was dismissed on February 15, 2013 [*see* Doc. 24-3 at 3], and Field did not enter into a plea agreement until May 6, 2013 [Docs. 1 ¶ 303; 1-4], it seems that it would further be inequitable to apply the doctrine to bar Plaintiffs from bringing a claim under RICO that they could not bring until Field was criminally convicted. *See* The PSLRA and Criminal Conviction Exception discussion, *supra.*

**Failure to State a Claim**

Field next argues that Plaintiffs fail to allege the elements of civil RICO and/or any fraud with sufficient particularity under Rules 8 and 9 of the Federal Rules of Civil Procedure. [Doc. 24-2 at 2–18.]  To state a claim under RICO, a plaintiff must properly plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that must include at least two racketeering acts. *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479 (1985).  Additionally, the plaintiff must plead that he was injured by the defendant's RICO violation.  *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 649 (D.S.C. 2005) (citation omitted).  Here, Field asserts Plaintiffs have failed to properly plead each of the elements.  The Court disagrees.

The standards for allegations of the "conduct" element of a RICO violation have been articulated by the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170 (1993). *Reves* addressed the required degree of participation in the conduct to impose liability under RICO, holding "one must participate in the operation or management of the enterprise itself" to be subject to liability under § 1962(c). *Id.* at 185.  The Court concludes that Plaintiffs have alleged that Field participated in the operation or management of the enterprise itself.  The Complaint alleges that Field and Elliot Salzman arranged the meeting in New Jersey to pitch to a group of investors the idea of forming a business plan where money would be raised from South Carolina investors and sent to a parent company in New Jersey for relending and real estate development.  [Doc. 1 ¶ 11.]  That meeting is what led to the formation of CIF, and the Complaint alleges that Field primarily controlled the business activities of CIF [*id.* ¶ 23] and that Field, as manager of CIF authored the 2002, 2003, 2004, 2005, and 2006 prospectuses [Doc. 1-1 ¶ 239, 257, 278, 293, 303, 310, 344,

18

351].  Accordingly, the Complaint alleges that Field participated in the conduct of the enterprise itself, and much of Field's argument to the contrary focuses on factual disputes that are not appropriate on a motion to dismiss.

An "enterprise" is defined as an ongoing organization, formal or informal, in which the various associates function as a continuing unit.  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  The "enterprise" under RICO must not simply be "the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (rejecting "enterprise" allegations where plaintiff alleged that corporation was RICO "person" and corporation and its employees and agents were "enterprise").  The Complaint alleges that Defendants together form the enterprise.  'Proof of the existence of an associated-in-fact enterprise requires proof of a 'common purpose' animating its associates, and this may be done by evidence of an 'on-going organization, formal or informal,' of those associates in which they function as a continuing unit."  *U.S. v. Griffin*, 660 F.2d 996, 1000 (4th Cir. 1981).  The Complaint alleges numerous transactions, misrepresentations, and omissions Defendants engaged in and that they were associated for a common purpose.  These allegations meet the threshold test of *Turkette*.

The RICO Act defines a "pattern" as requiring at least two acts of racketeering or predicate acts.  18 U.S.C. § 1961(5).  To establish a pattern of racketeering activity, the plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).  Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* at

241.  Closed-ended continuity may be established by a "series of related predicates extending over a substantial period of time."  *Id.* at 242.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *Id.*  Open-ended continuity may be established where, for example, the "related predicates themselves involve a distinct threat of long-term racketeering activity," or where the predicate acts "are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise."  *Id.* at 242–43.  Here, the Complaint alleges that Defendants committed multiple instances of fraud in the sale of securities over a number of years and, thus, satisfies the pattern of racketeering requirement.  Accordingly, Field's motion to dismiss should be denied with respect to his failure to state a claim argument.

**Remaining Arguments**

The Court has reviewed Field's remaining arguments—Plaintiffs lack standing to bring this action; Field, as an LLC Manager, has no privity with any Plaintiff; to the extent Note Holders have not yet liquidated damages, CIF still possesses numerous valuable pieces of property, is still in litigation, this action is not ripe for adjudication and must be dismissed; Field is immune under South Carolina law, insulating a manager from virtually all claims made by third parties; the CIF Operating Agreement and the Prospectus provisions provided immunity for Field for all actions and indemnification for any claims made against him, including attorneys' fees and defense costs; Plaintiffs stand *in pari delicto* with Field and/or CIF; all Plaintiffs were *Tomz* Class members and contractually limited their ability to pursue any claims against Field in the GMSA and in the Application for Note Purchase; F.R.Civ.P. 12(b)(7) and 19 mandate dismissal for failure to join

necessary parties; intervening or supervening cause; waiver, estoppel, and/or forum shopping; and Field is protected from representations in the Prospectus by the Safe Harbor provisions of securities law [Doc. 24-2 at 18–28]—and finds that under each of these sections, Field raises factual arguments that are not appropriate on a motion to dismiss where the allegations in the Complaint are to be taken as true.[6]  Indeed, in many of these sections, Field relies on exhibits that the Court has excluded from consideration. Accordingly, Field's motion to dismiss should be denied with respect to these arguments.[7]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendant Field's motion to dismiss be DENIED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 20, 2015
Greenville, South Carolina

---

[6]With respect to Field's argument regarding joinder of necessary parties, the Court notes that under the criminal conviction exception, Field and Pfeiffer are the only available defendants because they have been criminally convicted of securities fraud.

[7]In making this recommendation, the undersigned makes no finding with respect to the merits of these issues, only that these arguments, as raised by Field, involve factual disputes that are more appropriate to be raised following discovery on a motion for summary judgment.