IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Harold Brooks, Clara Louise Brooks,<br>Benjamin Brooks, William F. Tomz,<br>Frances W. Tomz, Sharon Finch,<br>Individually and as Class Representatives,<br><br>Plaintiffs,<br><br>v.<br><br>Arthur M. Field, Frederick Scott Pfeiffer,<br><br>Defendants.<br>_____ | Case No. 6:14-cv-02267-BHH-JDA |
| Arthur M. Field,<br><br>Counter-Claimant,<br><br>v.<br><br>Benjamin Brooks, Clara Louise Brooks,<br>Harold Brooks, Sharon Finch,<br>and William F. Tomz,<br><br>Counter-Defendants.<br>_____ | **REPORT AND RECOMMENDATION<br>OF THE MAGISTRATE JUDGE** |
| Arthur M. Field,<br><br>Third Party Plaintiff,<br><br>v.<br><br>Capital Investment Funding, LLC,<br><br>Third Party Defendant.<br>_____ | |

This matter is before the Court on motions to compel arbitration and to abstain filed by Defendant Arthur M. Field ("Field"). [Docs. 97, 110, 156.] Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is

authorized to review all pre-trial matters involving litigation by individuals proceeding pro se and to provide a report and recommendation to the District Court.[1]

Plaintiffs filed this case on June 11, 2014, alleging violations of the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"). [Doc. 1] Field filed a motion to compel arbitration on April 30, 2015 [Doc. 97], a motion to abstain on May 22, 2015 [Doc. 110], and a second motion to compel arbitration and to stay discovery on September 17, 2015 [Doc. 156]. Plaintiffs filed responses in opposition to the first motion to compel arbitration on June 8, 2015 and June 12, 2015 [Docs. 125, 131], and Field filed replies on June 12, 2015 and June 15, 2015 [Docs. 130, 138]. Plaintiffs filed a response in opposition to the motion to abstain on May 23, 2015 [Doc. 111], and Field filed a reply on May 29, 2015 [Doc. 117] and a supplement to his reply on June 1, 2015 [Doc. 121]; Plaintiffs filed a sur reply on June 5, 2015 [Doc. 124]. Accordingly, the motions are ripe for review.[2]

_____

[1]Field is proceeding pro se.

[2]Although Field's second motion to compel arbitration and to stay discovery was filed on September 17, 2015 and, thus, no response has been filed, the Court considers the motion to be ripe for review because Field states that he renews his previously filed motion to compel arbitration following the filing of the Amended Complaint in this case and relies on the arguments, law, and exhibits included in his first motion to compel arbitration. [Doc. 156 at 1–2.] The Court is aware that a timely filed amended pleading supersedes the original pleading. *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) (As a general rule, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.*), 226 F.3d 160, 162 (2d Cir. 2000))); *see also* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2011) ("A pleading that has been amended . . . supersedes the pleading it modifies . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."). As a result, motions directed at the superseded pleading generally are to be denied as moot. *See, e.g.*, *Hall v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 2011 WL 4014315, at *1 (W.D.N.C. June 21, 2011) (citing *Colin v. Marconi Commerce Sys. Emps.' Ret. Plan*, 335 F. Supp. 2d 590, 614 (M.D.N.C. 2004); *Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. 2002)) (denying as moot the defendants' motions to dismiss because the

2

## BACKGROUND[3]

Plaintiffs bring this RICO action as a class action on behalf of 680 noteholders. [Doc. 152 ¶ 2.] Plaintiffs allege that they relied upon prospectuses prepared by Defendants as material representations to invest in their securities and to continue to let Defendants, by and through various corporations they controlled and/or managed, retain Plaintiffs' investments.  [*Id.* ¶ 228.]

---

second amended complaint rendered moot the defendants' pending motions to dismiss, which were related to the superseded complaint); *McCoy v. City of Columbia*, 2010 WL 3447476, at *1–2 (D.S.C. Aug. 31, 2010) (adopting the magistrate judge's report and recommendation to the extent it recommended that the motion to dismiss be found as moot because the amended complaint superseded the original complaint and rendered any attack upon it moot); *Rowley v. City of N. Myrtle Beach*, 2009 WL 750406, at *2–3 (D.S.C. Mar. 16, 2009) (finding as moot the defendants' motion to file answer out of time and the plaintiff's motion for default judgment based on the defendants' failure to timely answer the original complaint because "[t]he original complaint was, in a sense, amended out of existence." (quoting *Thomas v. Se. Pa. Transp. Auth.*, 1989 WL 11222, at *1 (E.D. Pa. 1989))).  However, "if some of the defects raised in the original motion remain in the new pleading, the court simply *may* consider the motion as being addressed to the amended pleading[ because to] hold otherwise would be to exalt form over substance." Wright et al., *supra*, § 1476 (emphasis added).  In this case, the Amended Complaint merely sets forth in more detail the elements required under Rule 23 of the Federal Rules of Civil Procedure in support of class certification.  [Doc. 152.]  As such, the Court will not treat Field's first motion to compel arbitration as moot and considers Field's second motion to compel arbitration and to stay discovery as merely supportive of his first motion to compel arbitration; thus, because the first motion to compel arbitration has been fully briefed, additional briefing is not necessary on Field's second motion to compel arbitration and to stay discovery.

[3]The facts included in this Background section are taken directly from Plaintiffs' Amended Complaint.  As stated, the Amended Complaint merely sets forth in more detail the elements required under Rule 23 of the Federal Rules of Civil Procedure in support of class certification.  It also clarifies that the action is brought on behalf of 680 noteholders rather than 1,142 noteholders.  [Doc. 152 at 1 n.1.]  As such, the Court considers all motions as being addressed to the Amended Complaint.  *See* Wright et al., *supra*, § 1476 ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

Field and Elliot Salzman arranged a meeting in New Jersey to pitch to a group of investors the idea of forming a business plan where money would be raised from South Carolina investors and then sent to a parent company in New Jersey for relending and real estate development.  [*Id.* ¶ 11.]  The investors agreed and, therefore, Lancaster Resources, Inc. ("LRI"), a New Jersey corporation, was formed on November 19, 1998.  [*Id.* ¶ 12.]  LRI held its organizational meeting of the first Board of Directors on February 24, 1999, and the minutes from that meeting reflect that LRI was to "acquire controlling interests of one or more other business to be used to further the business interests of the Corporation" and to "enter into a relationship with . . . a South Carolina limited liability company, and shall own 90% thereto, and shall borrow funds from such company and enter into repayment agreements."  [*Id.* ¶¶ 13, 15.]  The South Carolina entity formed pursuant to this business plan was ultimately named Capital Investment Funding, LLC ("CIF").[4]  [*Id.* ¶ 16.]  The initial incorporators meeting for CIF took place on February 25, 1999, and LRI owned more than 90% of the CIF membership interest.  [*Id.* ¶ 18.]  On March 13, 2000, the members of CIF executed an Operating Agreement, providing that "the primary purpose of [CIF] shall be to raise funding to be loaned to [LRI] for the purposes set forth in its Articles of Incorporation, By-Laws, Operating Agreements[,] etc., including the making of loans to purchase, develop, operate, lease, manage, and sell, alone or with others, commercial real property in the New York tri-state area, but this statement shall not confine or limit the Company's legitimate business activities."  [*Id.* ¶ 25 (some alterations in original).]

---

[4]CIF was initially formed as *Carolina* Investment Funding, LLC on January 13, 1999; however, it later changed its name to *Capital* Investment Funding, LLC.  [Doc. 152 ¶¶ 17, 19.]

On February 26, 1999, Field signed Form U-1, Uniform Application to Register Securities, which was submitted to the South Carolina Securities Division in connection with its application to register securities of up to $4,000,000. [*Id.* ¶ 20.] CIF issued a prospectus dated April 1, 1999, for distribution to South Carolina residents. [*Id.* ¶ 21.] CIF then began selling promissory notes to investors in South Carolina. [*Id.* ¶ 22.] During this time, Field primarily controlled the business activities of CIF. [*Id.* ¶ 23.] At some point, Field befriended Defendant Frederick Scott Pfeiffer ("Pfeiffer"), and the two began to intertwine their business affairs. [*Id.* ¶¶ 30–31.] The Complaint contains specific details about the alleged fraud by Defendants, including creating sham entities and making misrepresentations so that CIF's financial position appeared to be better than it was. On January 20, 2008, Field sent an unsigned letter to CIF's investors, indicating that CIF was no longer accepting monies and that it was winding up its business. [*Id.* ¶ 295.]

Plaintiffs purchased numerous notes from CIF between 2000 and 2008, with interest rates between 6.25% and 9.75% per annum. [*Id.* ¶¶ 229–93.] Interest is due on each note and has not been paid. [*Id.* ¶ 294.]

On or about June 13, 2012, the State Grand Jury of the State of South Carolina issued a criminal indictment against Defendants. [*Id.* ¶ 5.] Field was charged with two counts of criminal conspiracy under S.C. Code Ann. § 16-17-410, one count of forgery under S.C. Code Ann. § 16-13-10, and eleven counts of securities fraud under S.C. Code Ann. §§ 35-1-501 and 35-1-508. [*Id.* ¶ 299; Doc. 152-1 at 52–91.] On or about May 6, 2013, Field entered into a plea agreement, agreeing to plead guilty to all charges. [Docs. 152 ¶ 303; 152-4.]

5

Four previous actions have been filed against one or both Defendants relating to their dealings with CIF. [Doc. 152 ¶ 312.] On or about May 16, 2008, noteholders, including Plaintiffs in this action, instituted an action in South Carolina state court related to their purchase of securities from CIF. [*Id.* ¶ 313.] That suit was combined and consolidated with another action. [*Id.*] At the time, CIF remained under the control and direction of Field, and on or about August 24, 2009, the parties in that action reached a Global Settlement Agreement ("GSA"). [*Id.* ¶¶ 314–15.] Under the GSA, control of CIF was given to a court-appointed receiver and the plaintiffs dismissed their actions against Defendants, but specifically agreed that "the rights of the class under any state or federal securities law shall not be affected by this settlement . . . ." [*Id.* ¶ 315.] Following the appointment of the receiver, CIF filed a legal malpractice claim against Pfeiffer and others. [*Id.* ¶ 316.] That case settled and was dismissed on February 15, 2013. [*Id.* ¶ 318.] On November 28, 2012, CIF filed an action in this Court alleging RICO violations and numerous state law claims. [*Id.* ¶ 319.] On August 26, 2013, CIF filed another action in this Court alleging the same violations against defendants named in the original RICO suit for the purpose of perfecting service on those defendants. [*Id.* at 47 n.2.] Both of these RICO cases were dismissed on January 20, 2015 as barred by the Private Securities Litigation Reform Act.[5] *Capital Inv. Funding, LLC v. Field*, Civil Action Nos. 6:12-3401-BHH, 6:13-2326-BHH, 2015 WL 247720 (D.S.C. Jan. 20, 2015). In this case, Plaintiffs

---

[5]It is appropriate for this Court to take judicial notice of its prior cases. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

6

allege two causes of action—a violation of 18 U.S.C. § 1962(c) and a violation of 18 U.S.C. § 1962(d)—and seek certification of a class as well as actual damages, trebled, plus attorneys' fees and costs.  [Doc. 152 at 47–50.]

## APPLICABLE LAW

**Motion to Compel Arbitration Standard**

The Federal Arbitration Act ("FAA") establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985).  The FAA was enacted "in 1925 in order 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts.'"  *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation."  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute.  *Id.* §§ 2, 3.  But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id.* § 4.  "'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues

7

should be resolved in favor of arbitration.'" *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  "A court should not deny a request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Id.* at 349–50 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Warrior & Gulf Navigation Co.*, 363 U.S. at 582.

A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute.  *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005).  "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."  *Adkins*, 303 F.3d at 501 (internal quotations and citation omitted).  "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation."  *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000).

**Abstention Doctrine Standards**

Field argues this Court should abstain from considering this action based on *Younger* and *Colorado River* abstention doctrines. [Doc. 110.] The Court considers Field's arguments for abstention in view of well-established Supreme Court precedent that abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 188–99.

### *Younger Abstention*

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court should not interfere with ongoing state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). *Younger* demands abstention "where granting the requested relief would require adjudication of federal constitutional issues involved in the pending state action." *Traverso v. Penn*, 874 F.2d 209, 212 (4th Cir. 1989). The Supreme Court extended the *Younger* doctrine to apply to "noncriminal judicial proceedings when important state interests are involved." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (citations omitted). The Supreme Court has indicated that abstention is appropriate where (1) there are ongoing state judicial proceedings; (2) the proceedings implicate

9

important state interests; and (3) there is an adequate opportunity to raise federal constitutional challenges in the state proceedings. *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432.

### Colorado River Abstention

"Under the *Colorado River* abstention doctrine, a district court may abstain from exercising jurisdiction 'in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings, and wise judicial administration, giving regard to conservation of judicial resources, and comprehensive disposition of litigation clearly favors abstention.'" *Hayes v. JP Morgan Chase Bank*, C/A No. 3:13-cv-1884-JFA, 2014 WL 4198897, at *3 (D.S.C. Aug. 20, 2014) (footnote omitted) (quoting *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340–41 (2002)). To determine whether *Colorado River* abstention is appropriate, the court must first consider "whether there are parallel federal and state suits." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006) (citation omitted). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991) (citation omitted).

## DISCUSSION

**Motions to Compel Arbitration**

Field seeks to compel arbitration of all claims and causes of action brought by Plaintiffs. [Doc. 97 at 1.] Field alleges all noteholders were subject to the terms of the Prospectus, which, beginning in 2004, included an "Agreement to Arbitrate," and the arbitration provisions were disclosed in the Prospectus, the Application for Note Purchase,

and by Separate Agreement.  [*Id.* at 1–2.]  Field contends that the language of the arbitration clause requires arbitration where the "face value" of the note is less than $50,000 and that each note constitutes a separate instrument for purposes of the arbitration clause.  [*Id.*]  Plaintiffs argue, however, that Field misstates the language of the document, that the arbitration clause does not refer to the value of only a single note, and that all disputes exceeding $50,000 are not included in the agreement to arbitrate.  [Doc. 125 at 2.]

The Supreme Court of South Carolina has stated, "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language."  *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009) (citing *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003).  "If the language is clear and unambiguous, the language alone determines the contract's force and effect."  *United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc.*, 413 S.E.2d 866, 868 (S.C. Ct. App. 1992) (citing *Connor v. Alvarez*, 328 S.E.2d 334 (S.C. 1985)).  "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense."  *C.A.N. Enters., Inc. v. S.C. Health and Human Servs. Fin. Comm'n*, 373 S.E.2d 584 (S.C. 1988) (citing *Warner v. Weader*, 311 S.E.2d 78, 79 (S.C. 1983)).

The 2006 Prospectus provides as follows:

> TAKE NOTICE:  In order to expedite all litigation and/or claims by any creditor or debtor, if not referred to or subject to arbitration (described immediately below), all investors hereby waive the right to a jury trial and all ultimate borrowers shall be required to waive the right to a jury trial, if such waiver is permitted by law.  All investors will be required to sign a separate document acknowledging such waivers as a condition

11

of purchase of Note, unless otherwise agreed to by the Company. The Company aims to achieve total client satisfaction and has received recognition for its prior efforts. However, in the event any present or prior holder of a Note issued by the Company at any time has any dispute with the Company, including the validity hereof, such dispute shall be resolved by binding arbitration in Greenville County and the result thereof may be entered and enforced at law in a court of competent jurisdiction and the holder voluntarily waives the right to a trial by jury of such issue(s) to avoid the time and expense of litigation. This Agreement to arbitrate shall include all issues which may arise including the validity of this article for disputes of $50,000 or less. The costs thereof and the legal fees of the successful party shall be borne by such party filing the claim and the procedure shall be as set forth by the American Arbitration Association; however the rules of evidence shall apply at all times. Notice to arbitrate shall be served in accord with such rules and arbitrators shall be selected from the available A.A.A. panel. Disputes solely concerning the computation of interest may be resolved by mediation before an independent C.P.A. Complaints involving amounts up to $5,000 may be referred to the Upstate S.C. Better Business Bureau for resolution and the Company voluntarily participates in such form of resolution. Claims exceeding $50,000 in damages shall be litigated and venue shall be in Greenville County, South Carolina and the costs thereof and the legal fees of the successful party shall be borne by the party filing the claim. This paragraph shall not bar or impede an investor's right to recourse under the Securities Act of the State of South Carolina, if such Act would take precedence or otherwise limit the remedy of arbitration.

[Doc. 131-5 at 31.] The same arbitration language was included in "Dispute Resolution and Arbitration," a separate agreement that was included with every note application. [*See* Doc. 99 at 32.]

Considering the language of the arbitration clause, the Court finds that Plaintiffs' claims in this case are excluded from the arbitration requirement. Although Field contends the language in the arbitration clause intended to require arbitration for notes with a face value of less than $50,000, the clear language of the clause does not support such an

interpretation. The language of the arbitration clause includes "disputes of $50,000 or less" and excludes "[c]laims exceeding $50,000 in damages," specifically providing that these claims shall be litigated. Plaintiffs contend that the notes purchased by them range in "aggregate value to each person from approximately $35,000.00 up through hundreds of thousands of dollars." [Doc. 125 at 3.] Plaintiffs also claim they are entitled to receive treble damages upon the successful prosecution of the case and, thus, "the very least of the claims identified . . . well exceeds the $50,000.00 threshold." [*Id.*] Even using Field's contention that the "median note was $30,000," [*see* Doc. 130 at 2 n.1], because RICO provides for treble damages, *see U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312 (4th Cir. 2010) ("[I]n a civil RICO action, a successful plaintiff may recover not only costs and attorney's fees, but also *treble* damages."), such claims would be excluded from the arbitration agreement, which unambiguously refers to *disputes* and *claims* and not to individual notes. Accordingly, based on the language of the arbitration clause at issue, the Court finds that Plaintiffs' claims are expressly excluded from the arbitration requirement; therefore, the Court recommends that Field's motions to compel arbitration be denied.[6]

**Motion to Abstain**

Field argues that abstention is proper under *Younger* because certain litigation and/or administrative proceedings in which he is involved have not been fully resolved by the State of New Jersey, the State of Connecticut, and/or possibly one or more state and/or federal judicial or quasi-judicial agencies. [Doc. 110 at 4.] Field argues that substantial

---

[6]Because the Court recommends that Field's motions to compel arbitration be denied due to the exclusion of Plaintiffs' claims from the arbitration requirement in the arbitration clause, the Court declines to address Plaintiffs' additional arguments in opposition to Field's motions to compel arbitration.

reasons exist to "surrender" federal jurisdiction "in order to protect the significant guaranteed rights of defendants Field and/or Pfieffer." [Id.] However, this case does not involve any federal constitutional issues and, as such, abstention is not appropriate under *Younger*.

Field also contends the Court should abstain from exercising jurisdiction under the *Colorado River* abstention doctrine. [Doc. 110 at 4.] Field submits that there is a substantial likelihood that all of the proceedings filed prior to this one will result in disjointed and irreconcilable results. [*Id.* at 6.] However, Field has not established that this action is parallel to a pending state action. Although Field conclusorily argues that this action and the appeal pending in the Superior Court, Appellate Division, State of New Jersey are based upon a common nucleus of facts and involve parties "clearly in privity," [Doc. 110 at 6], he offers no evidentiary support for this argument. In his motion to abstain and in his reply and supplement to his reply, Field fails to attach a copy of the complaint in the New Jersey state case or to direct the Court to a copy of the complaint elsewhere in the record in this case; therefore, the Court is unaware of the parties or causes of action in the New Jersey state case. Moreover, Field concedes that the parties are not the same as Plaintiffs in this case but argues that they are in privity, though he provides no legal support for his position that parties in privity satisfy the "substantially the same parties" requirement under *Colorado River*. Accordingly, the Court recommends that Field's motion to abstain be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Field's motion to compel arbitration [Doc. 97] be DENIED; motion to abstain [Doc. 110] be DENIED; and motion to compel arbitration and to stay discovery [Doc. 156] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 24, 2015
Greenville, South Carolina