IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Harold Brooks, Clara Louise Brooks, Benjamin Brooks, William F. Tomz, Frances W. Tomz, Sharon Finch, Individually and as Class Representatives, <br><br> Plaintiffs, <br><br> v. <br><br> Arthur M. Field, Frederick Scott Pfeiffer, <br><br> Defendants. | Case No. 6:14-cv-02267-BHH-JDA |
| Arthur M. Field, <br><br> Counter-Claimant, <br><br> v. <br><br> Benjamin Brooks, Clara Louise Brooks, Harold Brooks, Sharon Finch, and William F. Tomz, <br><br> Counter-Defendants. | **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| Arthur M. Field, <br><br> Third Party Plaintiff, <br><br> v. <br><br> Capital Investment Funding, LLC, <br><br> Third Party Defendant. | |

This matter is before the Court on Plaintiffs' motion to dismiss counterclaims. [Doc. 109.] Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters involving litigation

by individuals proceeding pro se and to provide a report and recommendation to the District Court.[1]

Plaintiffs filed this case on June 11, 2014, alleging violations of the civil Racketeer Influenced and Corrupt Organizations Act ("RICO").[2] [Doc. 1] On April 30, 2015, Defendant Arthur M. Field ("Field") filed a counterclaim against Plaintiffs [Doc. 100]; he filed a substitute counterclaim on May 1, 2015 to correct scrivener's errors in the original counterclaim [Doc. 101]. Plaintiffs filed a motion to dismiss counterclaims for failure to state claims on May 20, 2015. [Doc. 109.] Field filed a response in opposition to the motion to dismiss counterclaims on May 29, 2015.[3] [Doc. 118.] Accordingly, the motion is ripe for review.

## **BACKGROUND**[4]

Plaintiffs bring this RICO action as a class action on behalf of 680 noteholders. [Doc. 152 ¶ 2.] Plaintiffs allege that they relied upon prospectuses prepared by Defendants as material representations to invest in their securities and to continue to let

---

[1] Defendant Arthur M. Field is proceeding pro se.

[2] Plaintiffs, with leave of this Court, filed an Amended Complaint on September 10, 2015. [Doc. 152.] The Amended Complaint sets forth in more detail the elements required under Rule 23 of the Federal Rules of Civil Procedure in support of class certification. [*Id.*]

[3] Field submitted one document, captioned as a "REPLY TO MOTION TO DISMISS COUNTERCLAIM AND MOTION TO STRIKE," which the Clerk appropriately docketed as both a response in opposition to the motion to dismiss counterclaims and a motion to strike references to Lila Kirton. [Docs. 118, 119.]

[4] The facts included in this Background section are taken directly from Plaintiffs' Amended Complaint.

Defendants, by and through various corporations they controlled and/or managed, retain Plaintiffs' investments. [*Id.* ¶ 228.]

Field and Elliot Salzman arranged a meeting in New Jersey to pitch to a group of investors the idea of forming a business plan where money would be raised from South Carolina investors and then sent to a parent company in New Jersey for relending and real estate development. [*Id.* ¶ 11.] The investors agreed and, therefore, Lancaster Resources, Inc. ("LRI"), a New Jersey corporation, was formed on November 19, 1998. [*Id.* ¶ 12.] LRI held its organizational meeting of the first Board of Directors on February 24, 1999, and the minutes from that meeting reflect that LRI was to "acquire controlling interests of one or more other business to be used to further the business interests of the Corporation" and to "enter into a relationship with . . . a South Carolina limited liability company, and shall own 90% thereto, and shall borrow funds from such company and enter into repayment agreements." [*Id.* ¶¶ 13, 15.] The South Carolina entity formed pursuant to this business plan was ultimately named Capital Investment Funding, LLC ("CIF").[5] [*Id.* ¶ 16.] The initial incorporators meeting for CIF took place on February 25, 1999, and LRI owned more than 90% of the CIF membership interest. [*Id.* ¶ 18.] On March 13, 2000, the members of CIF executed an Operating Agreement, providing that "the primary purpose of [CIF] shall be to raise funding to be loaned to [LRI] for the purposes set forth in its Articles of Incorporation, By-Laws, Operating Agreements[,] etc., including the making of loans to purchase, develop, operate, lease, manage, and sell,

---

[5]CIF was initially formed as *Carolina* Investment Funding, LLC on January 13, 1999; however, it later changed its name to *Capital* Investment Funding, LLC. [Doc. 152 ¶¶ 17, 19.]

alone or with others, commercial real property in the New York tri-state area, but this statement shall not confine or limit the Company's legitimate business activities." [*Id.* ¶ 25 (some alterations in original).]

On February 26, 1999, Field signed Form U-1, Uniform Application to Register Securities, which was submitted to the South Carolina Securities Division in connection with its application to register securities of up to $4,000,000. [*Id.* ¶ 20.] CIF issued a prospectus dated April 1, 1999, for distribution to South Carolina residents. [*Id.* ¶ 21.] CIF then began selling promissory notes to investors in South Carolina. [*Id.* ¶ 22.] During this time, Field primarily controlled the business activities of CIF. [*Id.* ¶ 23.] At some point, Field befriended Defendant Frederick Scott Pfeiffer ("Pfeiffer"), and the two began to intertwine their business affairs. [*Id.* ¶¶ 30–31.] The Complaint contains specific details about the alleged fraud by Defendants, including creating sham entities and making misrepresentations so that CIF's financial position appeared to be better than it was. On January 20, 2008, Field sent an unsigned letter to CIF's investors, indicating that CIF was no longer accepting monies and that it was winding up its business. [*Id.* ¶ 295.]

Plaintiffs purchased numerous notes from CIF between 2000 and 2008, with interest rates between 6.25% and 9.75% per annum. [*Id.* ¶¶ 229–93.] Interest is due on each note and has not been paid. [*Id.* ¶ 294.]

On or about June 13, 2012, the State Grand Jury of the State of South Carolina issued a criminal indictment against Defendants. [*Id.* ¶ 5.] Field was charged with two counts of criminal conspiracy under S.C. Code Ann. § 16-17-410, one count of forgery under S.C. Code Ann. § 16-13-10, and eleven counts of securities fraud under S.C. Code

4

Ann. §§ 35-1-501 and 35-1-508.  [*Id.* ¶ 299; Doc. 152-1 at 52–91.]  On or about May 6, 2013, Field entered into a plea agreement, agreeing to plead guilty to all charges.  [Docs. 152 ¶ 303; 152-4.]

Four previous actions have been filed against one or both Defendants relating to their dealings with CIF.  [Doc. 152 ¶ 312.]  On or about May 16, 2008, noteholders, including Plaintiffs in this action, instituted an action in South Carolina state court related to their purchase of securities from CIF.  [*Id.* ¶ 313.]  That suit was combined and consolidated with another action.  [*Id.*]  At the time, CIF remained under the control and direction of Field, and on or about August 24, 2009, the parties in that action reached a Global Settlement Agreement ("GSA").  [*Id.* ¶¶ 314–15.]  Under the GSA, control of CIF was given to a court-appointed receiver and the plaintiffs dismissed their actions against Defendants, but specifically agreed that "the rights of the class under any state or federal securities law shall not be affected by this settlement . . . ."  [*Id.* ¶ 315.]  Following the appointment of the receiver, CIF filed a legal malpractice claim against Pfeiffer and others. [*Id.* ¶ 316.]  That case settled and was dismissed on February 15, 2013.  [*Id.* ¶ 318.]  On November 28, 2012, CIF filed an action in this Court alleging RICO violations and numerous state law claims.  [*Id.* ¶ 319.]  On August 26, 2013, CIF filed another action in this Court alleging the same violations against defendants named in the original RICO suit for the purpose of perfecting service on those defendants.  [*Id.* at 47 n.2.]  Both of these RICO cases were dismissed on January 20, 2015 as barred by the Private Securities Litigation Reform Act.[6]  *Capital Inv. Funding, LLC v. Field*, Civil Action Nos. 6:12-3401-

---

[6]It is appropriate for this Court to take judicial notice of its prior cases.  *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take

BHH, 6:13-2326-BHH, 2015 WL 247720 (D.S.C. Jan. 20, 2015). In this case, Plaintiffs allege two causes of action—a violation of 18 U.S.C. § 1962(c) and a violation of 18 U.S.C. § 1962(d)—and seek certification of a class as well as actual damages, trebled, plus attorneys' fees and costs. [Doc. 152 at 47–50.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleading**

Field filed his substitute counterclaim pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic

7

> recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

8

**DISCUSSION**

Field's 48-page substitute counterclaim[7] alleges the following thirteen causes of action:

(1)   RICO violation(s) of 18 U.S.C. §§ 1962(c) and/or 1962(d) and or 1964(c) and/or 1964(d);

(2)   misrepresentation, failure to supervise, breach of promise, invasion of privacy, extortion, and/or fraud;

(3)   breach of contract and inducement of breach of contract by CIF;

(4)   civil conspiracy;

(5)   outrage and/or infliction of distress;

(6)   negligent supervision and/or respondeat superior;

(7)   intentional and/or negligent tortious interference with contract;

(8)   misrepresentation, libel, and/or slander;

(9)   unjust enrichment, and/or conversion, and/or aiding and abetting all actions;

(10)  breach of duty;

(11)  waste of assets, and/or usurpation of corporate opportunity, and/or trespass to chattels;

(12)  common law negligence, comparative or contributory negligence, and/or breach of contract and covenants therein and equitable relief; and

(13)  violation of 42 U.S.C. § 1983 and/or S.C.U.F.T.P.A.

---

[7]Although Field's numbered pages reflect that the substitute counterclaim is 50 pages, Field's numbered pages 3 and 4 appear to be missing from the copy of the substitute counterclaim filed with the Court. [*See* Doc. 101 at 2–3 (reflecting numbered pages at the bottom jumping from page 2 to page 5).]

[Doc. 101.] As is typical of his filings, Field attempts to incorporate other filings and exhibits into his substitute counterclaim. Additionally, given the length of the substitute counterclaim and manner in which it is organized, it is somewhat difficult for the Court to determine which factual allegations support which causes of action.

In response to Field's 48-page substitute counterclaim, Plaintiffs filed an eight-page motion to dismiss, seeking to dismiss all counterclaims raised by Field for failing to state claims as a matter of law. [Doc. 109.] Plaintiffs cursorily argue that Field's counterclaims are based on the alleged actions of CIF and not Plaintiffs; Field's RICO counterclaim alleges violations of RICO by Plaintiffs although no Plaintiff has been convicted of securities fraud; and Field's state law counterclaims are inadequately plead or are not claims under South Carolina law. [*Id*. at 2–7.] Plaintiffs specifically address only five of the thirteen causes of action in Field's substitute counterclaim. [*Id.*]

Plaintiffs first argue that Field's counterclaims are based upon the alleged actions of CIF, for which Plaintiffs cannot be liable as a matter of law; thus, they argue all of Field's counterclaims should be dismissed.[8] [*Id.* at 2–3.] In support of this argument, Plaintiffs reference one paragraph—Paragraph 6—of Field's substitute counterclaim, the GSA, and the agency section of Judge Ralph King Anderson, Jr.'s book on requests to charge in South Carolina. [*Id.*] Plaintiffs are correct that in Paragraph 6 of Field's substitute counterclaim, Field asserts that S.C. Code Ann. § 33-44-410 provides him "with the statutory right to directly sue CIF and/or its Manager, agents, servants and/or employees";

---

[8]Plaintiffs reiterate this argument with respect to three of the five causes of actions they specifically address—breach of contract and inducement of breach of contract by CIF, civil conspiracy, and outrage and/or infliction of distress—as well as in their final argument with respect to Field's "remaining causes of action." [Doc. 109 at 6–7.]

however, contrary to Plaintiffs' assertion, the remainder of Field's substitute counterclaim does not outline why CIF alone has wronged Field. The substitute counterclaim includes many allegations about the actions of Plaintiffs in this case. [*See, e.g.*, Doc. 101 §§ 49 ("Harold Brooks, Clara Brooks and/or Benjamin Brooks, Sharon Finch, and/or William Tomz . . . knowingly and intentionally, or with a reckless disregard for the truth and/or effect thereof, made numerous false representations to CIF and/or Field . . . ."), 82 ("Clara and/or Benjamin Brooks knowingly and willfully posed as the 'custodian' for Harold Brooks as a *minor* . . . when Harold Brooks was over the age of 18 . . . ."), 84 ("[O]ne or more of the Plaintiffs herein provided knowingly false statements to the South Carolina Securities Division and/or the South Carolina Attorney General and/or the South Carolina State Grand Jury . . . .").]

As stated, the Court must accept as true all well-pleaded allegations and must liberally construe Field's pro se pleadings. Although Field's substitute counterclaim is somewhat confusing and inartfully pled, the Court cannot rely on one paragraph of the substitute counterclaim to support the proposition that the entire counterclaim is based upon the actions of CIF when numerous allegations in the substitute counterclaim refer to the actions of the individually named Plaintiffs. Additionally, although Plaintiffs argue that once a receiver was appointed under the GSA, Plaintiffs had no direct authority over the receiver, this argument fails to address entire portions of the substitute counterclaim, including the assertions relating to actions taken by Plaintiffs before the GSA was executed in 2009 or alleging Plaintiffs induced CIF to breach contracts and/or had a duty to protect CIF's assets. Moreover, Plaintiffs have failed to direct the Court to any case law supporting their argument at the motion to dismiss stage that CIF was not Plaintiffs' agent as a matter

11

of law; instead, they cite a book on jury instructions outlining the standard required to prove liability based on agency at trial.  Accordingly, Plaintiffs have failed to establish that Field's counterclaims are based upon the alleged actions of CIF alone and that they cannot be liable as a matter of law.

With respect to Plaintiffs' argument that this Court has already held the RICO claims in this case are governed by the Private Securities Litigation Reform Act, that holding was with respect to the RICO claims alleged in the Complaint, which the Court determined include conduct actionable as securities fraud.  [Docs. 50 at 10–12; 57.]  Plaintiffs have failed to provide any legal authority or analysis for the Court to determine whether the RICO cause of action alleged in the substitute counterclaim, which is different from the RICO claims alleged in the Amended Complaint, includes conduct actionable as securities fraud.  Accordingly, Plaintiffs have failed to establish that the RICO cause of action is barred.

Finally, with respect to Plaintiffs' remaining arguments—that extortion is not a tort claim recognized in South Carolina, that Field fails to set forth the nine elements required to establish fraud, or that statements made as part of the legal process are privileged and cannot serve as the basis for liability—Plaintiffs have again failed to provide any legal authority for these arguments.  Accordingly, Plaintiffs have failed to establish that these causes of action should be dismissed.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Plaintiffs' motion to dismiss counterclaims be DENIED.[9]

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 12, 2015
Greenville, South Carolina

---

[9] The undersigned is not convinced that the substitute counterclaim could survive a motion to dismiss properly raising arguments with respect to the individual causes of action. Indeed, when conducting limited independent research, the undersigned has found other legal arguments, not raised by Plaintiffs in their motion to dismiss, that appear to support dismissal of some of the causes of action in Field's substitute counterclaim. However, "it is not the job of this Court to provide the legal research necessary to support the parties' arguments if the parties are unwilling to do so themselves." *Bell v. Fairmont Raffles Hotel Int'l*, Civil Action No. 12-757, 2013 WL 1291005, at *2 (W.D. Pa. Mar. 27, 2013); *see also Thompson v. N. Am. Terrazzo, Inc.*, No. C13-1007RAJ, 2014 WL 2048188, at *1 n. 2 (W.D. Wash. May 19, 2014) ("The court notes that the parties have frequently failed to provide basic legal authority to the court, such as the elements of a cause of action. The court will not undertake counsel's job. Accordingly, the court has limited its analysis to the arguments that are supported by legal authority."). Accordingly, based on the arguments raised in the motion to dismiss, the undersigned recommends that the motion to dismiss be denied.